# United States District Court

### SOUTHERN DISTRICT OF NEW YORK

1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

**SUMMONS IN A CIVIL CASE**

### V.

CASE NUMBER:

PORT JEFFERSON HEALTH CARE CENTER
A/K/A GLENHAVEN,

08 CV 00398

TO: (Name and address of Defendant)

Port Jefferson Health Care Center a/k/a Glenhaven
150 Dark Hollow Road
Port Jefferson, New York 11777
(631) 473-5400

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

LOWELL PETERSON, ESQ.
MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 BROADWAY, SUITE 501
**NEW YORK, NY 10018**

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

JAN 1 5 2008

CLERK

DATE

(BY) DEPUTY CLERK

American LegalNet, Inc.
www.FormsWorkflow.com

AO 440  (Rev. 10/93) Summons in a Civil Action –SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant. Place where served: _____

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

_____

☐   Returned unexecuted: _____

_____

_____

_____

☐   Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
            Date                                    Signature of Server

                                            _____
                                            Address of Server

(1)      As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

92007

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08   CV   00398

------------------------------------ x

1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

                    Plaintiff,

PORT JEFFERSON HEALTH CARE CENTER
A/K/A GLENHAVEN,

                    Defendant.

------------------------------------------------------------ x

RECEIVED
COMPLAINT JAN 15 2008
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiff, 1199 SEIU UNITED HEALTHCARE WORKERS EAST ("Plaintiff" or "Union"), by its attorneys, Meyer, Suozzi, English & Klein, P.C., as and for its Complaint respectfully alleges as follows:

## NATURE OF PROCEEDING

       1.   Plaintiff sues to confirm a labor arbitration award pursuant to Section 301(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185(c).

## JURISDICTION

       2.   This Court has jurisdiction over this proceeding pursuant to Section 301(c) of the LMRA, 29 U.S.C. Section 185(c).

## VENUE

       3.   Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. Section 185(a).

## THE PARTIES

4.    Plaintiff Union, whose offices are located at 310 West 43rd Street, New York, New York, is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. Section 152(5).

5.    Defendant Port Jefferson Health Care Center a/k/a Glenhaven ("Glenhaven") is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. Section 152(2). Glenhaven's activities affect commerce within the meaning of Sections 2(6) and 2(7) of the LMRA, 29 U.S.C. Section 152(6) and (7).

## BACKGROUND

6.    Glenhaven is bound by the collective bargaining agreement between the Union and the Long Island Healthcare Association, a multiemployer bargaining association. That collective bargaining agreement is set forth in a series of Memoranda which are attached at Exhibit 1 (together, the "CBA").

7.    The CBA requires Glenhaven to contribute to various employee benefit plans on behalf of its employees.   The rates of contribution due to those plans are set forth in the Memoranda in Exhibit 1.

-2-

8.    The employee benefit plans include the 1199/SEIU Greater New York Pension Fund ("Pension Fund"), 1199/SEIU Greater New York Benefit Fund ("Benefit Fund"), 1199/SEIU Greater New York Education Fund ("Education Fund"), 1199/SEIU Greater New York Job Security Fund ("Job Security Fund"), 1199/SEIU Greater New York Child Care Fund ("Child Care Fund"), and 1199/SEIU Greater New York Worker Participation Fund (the "Worker Participation Fund")(together, the "Funds").

9.    In accordance with the CBA, any unresolved dispute concerning an employer's failure to make required contributions to the Funds is submitted to a designated Arbitrator to render a final and binding decision.

## AS AND FOR ITS FIRST CAUSE OF ACTION

10.    The Union repeats and realleges the allegations set forth in paragraphs "1" through "9" as stated above.

11.    In accordance with the CBA, the Union submitted to arbitration before a duly designated Arbitrator, Martin F. Scheinman, Esq., a dispute concerning Glenhaven's failure to remit contributions to the Funds due and owing for the period June 22, 2007 through November 30, 2007.

-3-

12.    In accordance with notice duly given,

Arbitrator Scheinman held a hearing on December 12, 2007

concerning Glenhaven's failure to remit contributions to the

Funds.

13.    After due consideration of all the evidence

presented, in an award dated December 14, 2007 (the "the

December 14 Award") Arbitrator Scheinman ruled that Glenhaven

violated the CBA by failing to make the required contributions

to the Funds.  A copy of the December 14 Award is attached as

Exhibit 2. The Arbitrator directed Glenhaven to pay the Funds as

follows within 30 days of the Award:

**Benefit Fund**

$193,352.49

**Pension Fund**

$54,218.89

**Education Fund**

$4,539.12

**Child Care Fund**

$4,539.12

-4-

### Job Security Fund

$2,269.56

### Worker Participation Fund

$2,269.56

"Failure to pay in a timely fashion shall result in interest accruing at the interest rate of twelve percent (12%) per annum." December 14 Award at p. 3.

14.    The Arbitrator sent written notice of his award to the Union and Glenhaven.

15.    Glenhaven has failed and refused, and continues to fail and refuse, to comply with the December 14 Award.

WHEREFORE, the Union respectfully prays for an Order and Judgment:

1.    Confirming the December 14 Award of Martin F. Scheinman, Esq.

2.    Directing Glenhaven to pay the Funds the following amounts plus interest at the statutory rate from January 14, 2008 until payment is received:

| | |
|---|---|
| Benefit Fund | $  193,352.49 |
| Pension Fund | $   54,218.89 |

-5-

| | |
|---|---|
| Education Fund | $  4,539.12 |
| Child Care Fund | $  4,539.12 |
| Job Security Fund | $  2,269.56 |
| Worker Participation Fund | $   2,269.56 |
| **TOTAL** | **$  261,188.74** |

    3.   Granting such other and further legal and equitable relief as the Court may deems just and proper, together with the reasonable attorney's fees and costs and disbursements for this proceeding.

Dated:   New York, New York
          January 15, 2008

                MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

                Lowell Peterson (LP 5405)
                Attorneys for Plaintiff
                1350 Broadway, Suite 501
                P.O. Box 822
                New York, New York  10018-0026
                212-239-4999
                lpeterson@msek.com

-6-

91891

MEMORANDUM OF AGREEMENT

Between

1199 SEIU UNITED HEALTHCARE WORKERS EAST
("1199" or "Union")

and

LONG ISLAND HEALTHCARE LABOR ASSOCIATION
("Association")

This Memorandum of Agreement ("MOA") shall apply to the collective bargaining agreements currently in effect between the Union and the Association ("CBAs").

1.    Continuation of Existing Terms:  All of the terms and conditions of the CBAs shall remain in full force and effect except as expressly modified in this MOA (the "new agreements").

2.    Duration:  The term of the new agreements shall be from May 1, 2007 - April 30, 2011.

3.    General Wage Increases and Increases to Minimum Rates:

    a.    Wage Increases:

        1.    October 1, 2007 - 3%

        2.    September 1, 2008 - $750 lump sum to all full-time employees (payable in one separate check), pro-rated for part-time employees based on hours paid during the 12 month calendar period immediately preceding September 1, 2008.

        3.    December 1, 2009 - 3%

        4.    December 1, 2010 - 2.25%

    b.    The wage increases in 1, 3 and 4 above shall be compounded and added to the contractual minimum rates. For non-parity facilities the wage increases shall be calculated on the minimum rates in the CBAs and shall be added to the minimum rates at such non-parity facilities.

4.    Pension Fund ("PF"):

The maximum number of years of credited service for which pension benefits may be paid shall increase effective January 1, 2011 from 25 years to 27 years. Active employees who retire on or after January 1, 2011 with 27 years of credited service shall be eligible for a pension of $999 per month (27 years x the accrual rate of $37 per month) No pension credits shall accrue in 2008 and 2009.

5.    Benefit Fund ("BF"):

a.    A program of savings initiatives shall be implemented that produces savings of $10 million per year effective January 1, 2008. Should a dispute arise under this provision, it shall be subject to the trustee deadlock procedures of the BF.

b.    The cost Savings Committee ("Committee") consisting of George Gresham and Mark Sussman, or their designees, shall continue to function. The Impartial Chairman shall also serve on this Committee. The functions of the Committee shall include establishing a base line for measurement, setting benchmarks and milestones, measuring the results of and monitoring the effect of the savings initiatives. The Committee shall also seek additional ways to improve the cost efficiency of the BF.

c.    Effective as soon as practicable, camp and scholarship benefits will no longer be provided by the BF. Rather, they will be provided by the Child Care Fund ("CCF") at no additional cost to the Employer. If necessary, the parties will consider diverting contributions from a Fund other than the BF or PF to fund these benefits in the CCF.

d.    Effective September 1, 2007 legal services will cease to be provided by the BF. As of that date, legal services will be provided by the legal plan that has been selected by the parties The Employers shall pay to the selected legal plan the sum of $115 per full-time employee for such services, with payments to be made directly to the legal plan in September of each year.

e.    There shall be a one (1) month reserve requirement in the BF.

6.    Pension and Benefit Fund Contributions:

a.    The following increases shall be made in the current Minimum and Master BF contribution rates in addition to any pending increases which have been awarded by the Impartial Chairman under the CBAs:

|  |  |
|---|---|
| January 1, 2008 | 1.75% |
| January 1, 2009 | 1.75% |
| April 1, 2010 | 2% |

b.    The Employers shall contribute 4% of gross bargaining unit payroll to the BF in each of the following months: August 2007, September 2007, October 2009, and November 2009.

c.    On March 1, 2011, the Employers shall contribute $295 per full-time bargaining unit employee ($177 per part-time employee) to the BF.

d.    Effective January 1, 2010, the Employers shall contribute an additional one-fifteenth of one percent (.15%) to a Fund designated by the parties. At such time as determined by the parties, but in no event later than March 31, 2011, the .15% shall be contributed to the PF.

e.    Contributions to the BF and PF shall be allocated by the parties each year, with the advice of the BF and PF actuaries, so as to (1) fund the level of benefits in the BF and a one month reserve, (2) meet minimum funding standards in the PF, (3) fund the current level of PF benefits, (4) fund the increase to 27 years in the number of pension credits that participants may accrue in the PF, and (5) satisfy applicable federal statutes and regulations.. Because no pension credits will be accrued in 2008 and 2009, it has been estimated by the actuaries that in each of these years 4 to 5 months of Employer contributions at the Employers' PF contribution rate will be required to be made to the PF and 7 to 8 months to the BF, in addition to the Employers' contributions to the BF at their BF contribution rate.

7.    <u>Job Security Date</u>: Employees employed by an Employer prior to January 1, 2000 shall be protected against layoff. Effective as of May 1, 2008, employees employed by an Employer prior to January 1, 2003, shall be protected from layoff. On or about May 1, 2010, the parties shall review (without being subject to arbitration) whether that date should be advanced. Unprotected employees laid off are eligible for benefits from the Job Security Fund.

In the event an Employer raises a substantial issue over the number of its protected bargaining unit employees (e.g., more than 75% of the employees in a department or area are protected) the issue may be referred to a Committee made up of George Gresham, the President of the Union, and Mark Sussman, the attorney for the Association, or their designees, but shall not be subject to its arbitration process.

8.    <u>Contract Administrators</u>: The Contract Administrators program shall continue through April 30, 2011 under the terms provided in Attachment A of the CBAs. The cost of the Contract Administrators Program shall be paid through the Worker Participation Fund.

9.    <u>Holidays</u>: The total number of holidays (inclusive of personal days) and premium holidays shall be as provided under the agreement between the Union and the League of Voluntary Hospitals and Homes ("League Agreement"). Incumbent LPNs shall continue to receive LPN Day as a holiday. Nothing herein shall require an employer to increase its number of holidays or premium holidays.

10.    Sick Leave:  Effective January 1, 2008, employees may accrue up to 12 sick leave days (13 for any incumbent employee who heretofore accrued 16 sick leave days; 15 for any LPN who heretofore accrued 15 or more sick leave days).  Thereafter, unused sick leave days up to 12 days will be paid out or banked at the sole option of the employee. Unused banked sick days (whether accrued before or after January 1, 2008) will be paid out upon retirement at the rate of pay in effect at the time of retirement.

11.    Longevity:  Employees hired after the ratification of this MOA shall receive longevity pay in accordance with the agreement between the Union and the Greater New York Health Care Facilities Association.

12.    New Direction and Innovation Committee:  The Union and Industry shall establish a Committee of not less than 3 members each which shall have as its primary focus strategic planning regarding the Nursing Home Industry, the relationship between the workforce and the operators of the Industry, the relationship between the parties and government agencies as well as how to improve the job satisfaction of workers in the Nursing Home Industry.  The Committee may determine its own agenda, but it is agreed the following are significant issues requiring the attention of the Committee.  These are culture change, how to cost effectively provide healthcare coverage to the workforce including the question of the appropriate healthcare benefits, the issue of expanding the number of employers and employees contributing the Greater New York Funds and whether a merger of the Funds with the Funds established and maintained under the League Agreement serves the interest of the workforce and the employers and how to be ready for the transition to pay for a performance system from government entities and private payers for nursing home care.

       The Committee shall also review conforming certain provisions of the CBAs (electronic transmission of Union dues, Credit Union, Political Action, and Funds Contributions, Workers Compensation Benefit accrual, discrimination, probationary period) with the corresponding provisions in the agreement between the Union and the League of Voluntary Hospitals and Homes.

       Where appropriate, the Committee may seek resources from the various Greater New York Funds, outside agencies and entities in order to facilitate its work.  The Impartial Chairman shall be an Ex Officio member of the Committee.

13.    New Employees:  Paragraph 12 of the CBAs shall continue for the life of this MOA.  The December 31, 2007 date in Paragraph 12 shall be extended to April 30, 2011.

14.    Economic Impact:  The preamble to the CBA will include the following paragraph: "The Employers have reviewed the contract's economic provisions and have costed out its economic impact and state that the economic terms of this Agreement are predictable and sustainable for its term."

15.     Impartial Chairman:  The parties reappoint Martin F. Scheinman for a new five (5) year term as Impartial Chairman, subject to the provisions of Article 9.B of the CBAs.

16.     Integrated Agreements:  Integrated Agreements updating the CBAs and incorporating the terms of this Agreement shall be prepared for execution as soon as practicable.

17.     Disputes:  Any dispute as to the interpretation or application of this MOA shall be submitted to arbitration before the Impartial Chairman.

This Agreement is subject to ratification by the Union and the Association.

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
      Pearl Gravat,
      Vice President of 1199

By: _____
      Kenneth Winston,
      Chair of the Labor
      Council of LIHLA

## LONG ISLAND HEALTHCARE LABOR ASSOCIATION

### SCHEDULE A

1.   Carillon Nursing Home & Rehabilitation Center
2.   Cedar Lodge Nursing Home
3.   Central Island Healthcare
4.   Daleview Care Center
5.   Glengarriff Healthcare Center
6.   Ocean Promenade Nursing Center
7.   Parkview Nursing Home
8.   Port Jefferson Health Care Facility a/k/a Glenhaven
9.   Riverhead Care Center
10.  Rockville Nursing Center
11.  St. James Plaza
12.  St. James Healthcare Center
13.  South Shore Healthcare

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

      With respect to paragraph 12 of the MOA executed this day, it is understood as follows:

      Neither the Employer nor the Union shall discriminate against or in favor of any Employee on account of race, color, creed, national origin, political belief, sex, sexual orientation, citizenship status, marital status, disability or age. There shall be no sexual harassment in the workplace.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
      Kenneth Winston,
      Chair of the Labor
      Council of LIHLA


AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
      Pearl Granat

July ⸻, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

     With respect to paragraphs 6.b, c, and e of the MOA executed this day, it is understood as follows:

     If as a result of new employers becoming contributing employers to the BF it appears, based on the advice of the BF and PF actuaries, that the October and November 2009 4% contributions and the March 2011 lump sum contributions are not necessary to fund the BF and/or PF those contributions will not be required to be made.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
    Kenneth Winston,
    Chair of the Labor
    Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
    Pearl Granat

July ‾ ‾, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

With respect to paragraph 6 of the MOA (Pension and Benefit Fund Contributions) executed this day, it is understood as follows:

1.    The minimum and master rates of contribution to the BF shall be as follows:

| Effective date | Minimum | Master |
|----------------|---------|--------|
| May 1, 2007 | 18.25% | 20.75% |
| January 1, 2008 | 21% | 22.75% |
| January 1, 2009 | 22.75% | 24.5% |
| April 1, 2010 | 24.75% | 26.5% |

The above rates incorporate the BF contribution rate increases set forth in the Impartial Chairman's October 2005 interest arbitration award as well as those set forth in the 2007-2011 MOA.

2.    As required in the parties' 2004-2008 MOA, in October 2007 and October 2008, the Employers shall contribute to the BF an amount equal to their contribution to the PF in addition to their contributions to the PF for such months.

Very truly yours,

LONG ISLAND HEALTHCARE
       ‾ ‾R ASSOCIATION

By: _____

       Kenneth Winston,
       Chair of the Labor
       Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
       Pearl Granat

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

With respect to paragraph 10 of the MOA executed this day, it is understood as follows:

The parties shall discuss the possibility of providing the BF life insurance benefit outside the BF and the cost implications and potential funding sources for providing this benefit.

Very truly yours,


LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By:_____
        Kenneth Winston,
        Chair of the Labor
        Council of LIHLA


AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST


By:_____
        Pearl Granat

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period May 1, 2007 through April 30, 2011, and has the same force and effect as if set forth therein.

The 9.65% employment credit applicable to the BF, JSF, WPF, Education Fund, and Childcare Fund, as determined by the Impartial Chairman, shall cease as of the end of the month in which this MOA is ratified by both parties. Effective as of that date, contributions shall be made to the Funds on all hours worked or paid, provided that where employers contribute on the wages of the employees who regularly work the scheduled hours, they will not be required to contribute as well on the wages of employees covering those employees when they are out on paid time off (except to the PF for employees who cover for 850 hours or more).

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
        Kenneth Winston,
        Chair of the Labor
        Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
        Pearl Granat

July __, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period May 1, 2007 through April 30, 2011, and has the same force and effect as if set forth therein.

Paragraph 9C of the CBAs shall be amended to read as follows:

> Part-time employees (defined as employees who work less than a full work week and were not hired to work full time) shall be paid the regular minimum rate and shall receive pro-rated pay, sick leave, holidays, vacations, etc., according to the hours they actually work.

The remainder of paragraph 9C shall be deleted as inconsistent with current practice, provided, however, that no employee who triggered into full-timer benefit status and received full-timer benefits pursuant to paragraph 9C as of the ratification of this MOA shall suffer a reduction in status or benefits as long as such employee continues to work five days per week.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
    Kenneth Winston,
    Chair of the Labor
    Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
    Pearl Granat

July __, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York   10036

Dear Ms. Granat:

The holidays and premium holidays (as defined in the CBAs) under paragraph 9 of the MOA shall be as follows:

> New Year's Day*
> Martin Luther King Birthday*
> President's Day*
> Easter Sunday
> Memorial Day*
> Independence Day*
> Labor Day*
> Thanksgiving Day*
> Christmas Day*
> Employee's Birthday
> (2) Personal Days
> LPN Day (for incumbent LPNs)

*Denotes premium holiday.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
Kenneth Winston,
Chair of the Labor
Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____

MEMORANDUM OF AGREEMENT

Between

NEW YORK'S HEALTH AND HUMAN SERVICE UNION
1199/SEIU, AFL-CIO ("1199" OR "Union")

and

Long Island Healthcare Labor Association

This Memorandum of Agreement ("MOA") shall apply to the collective bargaining agreements currently in effect between the Union and the Association ("CBAs").

1.     Continuation of Existing Terms:  All of the terms and conditions of the CBAs shall remain in full force and effect except as expressly modified in this MOA (the "new agreements").

2.     Duration:  The term of the new agreements shall be from June 1, 2004 - April 30, 2008.

3.     General Wage Increases and Increases to Minimum Rates:

        A.   Wage Increases:

             1.   June 1, 2004 - 3%.

             2.   December 1, 2005 - 3%.

             3.   December 1, 2006 - 3%.

             4.   October 1, 2007 - 3%.

        The above wage increases shall be compounded and added to the contractual minimum rates.


        B.   LPN Minimum:

        The LPN minimum shall be adjusted to $20.24 per hour effective June 1, 2004.

4.    Funds Contributions and Benefits:

A.    Benefit Fund:

1. The parties recognize that the Employers in the long term care industry who applied for grants through the Greater New York Consortium shall contribute $15 million dollars to the Benefit Fund ("BF") from the proceeds received by Employers through the Supplemental Quality Care Grant and related monies in the following manner:

The aforesaid $15 million dollars will be contributed to the Benefit Fund within 10 days from the receipt of such amount by the Employers.

Each Employer receiving Quality Care Grant and/or related monies shall contribute its proportionate share of the aforesaid $15 million dollars by applying the same percentage as its grant represents to the overall grant dollars received (e.g., if the total amount of grant dollars received by Consortium members is $40 million dollars and the Employer receives $1 million dollars it shall contribute 1/40th of the $15 million dollars.

2.    Legal Services:    The 1115 Prepaid Legal Services Fund ("LF") shall be merged into the BF effective as of January 1, 2005. Legal services benefits as developed by the BF trustees shall thereafter be available to participants in the BF eligible for such benefits. There shall be no additional Employer contributions to the BF to fund the legal services benefits. The $8 per month contribution made by Employers to the LF shall cease effective May 31, 2004.

3.    A program of savings initiatives shall be implemented that produces savings of $22 million over the term of this MOA and achieves a "going out" annual savings rate of at least

$4 million by the end of the MOA.    (See side letter.)

4.  A  cost  Savings  Committee  ("Committee") consisting  of  Dennis  Rivera  and  Mark Sussman,  or  their  designees,  shall  be established.    The functions of the Committee shall include establishing a base line for measurement,    setting    benchmarks    and milestones,  measuring  the  results  of  and monitoring  the  effect  of  the  savings initiatives.    The Committee shall also seek additional  ways.. to  improve  the  cost efficiency of the BF.

Effective  May 1,  2005,  and  every  twelve months thereafter, a consultant retained by the  Committee  shall  determine  if  the anticipated savings are being achieved.    In the event of a shortfall Mark Sussman and Dennis  Rivera,  or  their  designees  shall decide whether to direct a diversion from the PF to the BF to make up such shortfall.

5.  As  part  of  cost  savings,  the  parties recognize that the Union's Delegates will play a pivotal role in educating the Union membership  in  understanding  the  cost savings  program,  in  helping  to  prevent fraud  and  abuse  in  the  Funds,  and  in understanding  the  CBAs  and  the  new agreements and the collective bargaining process.    In this regard, the Delegates will be released for up to five (5) days with pay over the term of this agreement for intensive training in these areas. The release of Delegates shall not unreasonably interfere  with  the  operations  of  the Employers. The Employers will be reimbursed from the Worker Participation Fund for the cost of release time (approximately $1,000 per Delegate).

This  provision  shall  replace  the  existing provision in the parties' collective bargaining agreements concerning delegate days.

6. It is the agreement of the Association, the Union and the Funds to implement, wherever possible, electronic transmission of dues remittances, Fund contributions and reports and to streamline reporting requirements. The Association, the Union and the Funds will meet to discuss the most practicable implementation program to achieve this objective.

B.   Pension Fund:

1.   Active employees who retire on or after January 1, 2005 shall receive a pension based on an accrual rate of $37 per month to a maximum pension of $925 per month ($37 x 25 years).

2.   Pension Fund Diversions:

The particulars of our agreement outlined below are as follows:

<u>June 1, 2004 - May 31, 2005:</u>

The Employers shall make 3 months of contributions to the Pension Fund (March, April and May 2005).

3 months of Pension Fund contributions shall be diverted to the Benefit Fund (September and October 2004 and February 2005).

No contributions shall be required to be made to the Pension Fund for the months of (June, July, August, November and December 2004 and January 2005).

<u>June 1, 2005 - May 31, 2006:</u>

The Employers shall make 10 months of contributions to the Pension Fund (August 2005 through May 2006).

- 4 -

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2005).

### June 1, 2006 - May 31, 2007:

The Employers shall make 10 months of contributions to the Pension Fund (August 2006 through May 2007).

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2006).

An additional 1 month of Pension Fund contributions (a 13th month) shall be contributed to the Pension Fund or diverted to the Benefit Fund as determined by the parties according to the economic needs of the Funds (October 2006).

### June 1, 2007 - May 31, 2008:

The Employers shall make 10 months of contributions to the Pension Fund (August 2007 through May 2008).

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2007).

An additional 1 month of Pension Fund contributions (a 13th month) shall be contributed to the Pension Fund or diverted to the Benefit Fund as determined by the parties according to the economic needs of the Funds (October 2007).

C.   Job Security Fund:

The diversion currently in effect from the 1199 Greater New York Job Security Fund ("JSF") to the 1199 Greater New York Worker Participation Fund ("WPF") shall continue through May 31,2005. Effective June 1, 2005, Employers shall contribute to the JSF at the rate of one-quarter (.25%) percent of gross payroll.

- 5 -

D.   Worker Participation Fund:

Effective June 1, 2006 Employers shall commence contributing to the WPF at the rate of one-quarter percent (".25%") of gross payroll.

5.   Job Security Date:   Employees employed by an Employer prior to January 1, 2000 shall be protected against layoff. Unprotected employees laid off are eligible for benefits from the JSF.

In the event an Employer raises a substantial issue over the number of its protected bargaining unit employees (e.g., more than 75% of the employees in a department or area are protected) the issue may be referred to a Committee made up of Dennis Rivera, and Mark Sussman, or their designees, but shall not be subject to its arbitration process.

6. Minimum Wages:   The parties shall continue to discuss the pending issues between them concerning the use of Supplemental Quality Care Grant monies or related monies from the State of New York to achieve adjustments, where appropriate, to the minimum wages in certain classifications. In furtherance of these discussions, the Employers will provide the Union within five (5) days hereof with current payroll runs covering all bargaining unit employees in all classifications.   Within ten (10) days thereafter the parties shall meet to determine appropriate adjustments if any.   Within ten (10) days after receipt by each Employer of Grant monies or related monies, any agreed upon wage adjustments shall be made by each Employer from said Grant monies and/or related monies. In the event the parties cannot agree within sixty (60) days of receipt of such monies, the matter shall be submitted to the Impartial Chairman for a final adjudication by him, such adjudication to be completed within sixty (60) days.

To the extent an Employer does not receive any Grant or related monies, the Union commits itself to assist such Employer in obtaining alternative funds through the State of New York.

7. <u>Contract Administrators</u>:  The Association and the Union shall implement an employee release time program to provide for Labor Relations and benefits administration. This Program shall be effective for the period January 1, 2005 – April 30, 2008. The release of Contract Administrators shall not unreasonably interfere with the operations of the Employer. The cost of the Contract Administrators Program shall be paid through the WPF.

8. <u>Employment Service</u>: Each Employer shall notify the 1199 Employment Service of all vacancies not filled from within its facility. The Employment Service shall have three (3) working days to refer qualified applicants to the Employer before the Employer may hire from other sources. The Employer retains the right to hire or decline to hire any applicant referred by the Employment Service in its sole discretion.

9. <u>Technical and Professional Employees</u>: The parties shall discuss the appropriate rates and unit placement of employees in technical and professional classifications in the long term care industry. In the event that these discussions do not result in agreement by March 1, 2005, the rates, classifications, and unit placement of such employees shall be submitted to the Impartial Chairman for binding interest arbitration.

10. <u>Impartial Chairman</u>:  The parties reappoint Martin F. Scheinman for a new five (5) year term as Impartial Chairman, subject to the provisions of Article 9.B of the CBAs.

11. <u>Quality Care Committee</u>:  The Union and the "Association" shall discuss the establishment of a Quality Care Committee to study and review nursing care practices, including job assignments and duties of bargaining unit members.   The Q.C.C. shall lead to recommendations to the "Association" and 1199 Nursing Home Division leadership with reference to nursing care practices, with the goal of providing appropriate care for each resident in accordance with the New York standards.

12. <u>New Employees</u>:
The following provisions shall apply only during the period June 1, 2004 through December 31, 2007, at which point they

will cease to be part of the parties' collective bargaining agreement.

During this period, and only after the ratification of this agreement, the Employers shall be permitted to hire up to five (5) FTEs in the Service Unit who will be paid the contractual minimum but who will not receive fringe benefits, including health coverage and coverage under the contractual Funds.

The foregoing shall be subject to the following conditions: 1) no bargaining unit employee shall be laid off as a result of such hiring; 2) the seniority, posting and probationary provisions of the collective bargaining agreement shall not ·be altered as a result of the foregoing.

No employee may be hired beyond the five (5) FTE limitation unless, in order of seniority, the employees theretofore hired under this provision are moved into benefit status.

13. <u>Terms and Conditions</u>:  The provisions of paragraph 1 (Terms and Conditions) of the parties March 25, 2002 Memorandum of Agreement shall be deemed satisfied.

14.<u>Disputes</u>:    Any  dispute  as  to  the  interpretation  or application of this MOA shall be submitted to arbitration before the Impartial Chairman.

    This Agreement is subject to ratification by the Union and the Association.

NEW YORK'S HEALTH &
HUMAN SERVICE UNION,
1199/SEIU, AFL-CIO

Long Island Healthcare
Labor Association

_Pearl Granat_
Pearl Granat,
Vice President                _Joanne McCarthy VP_

_Kenneth Winston_
Kenneth Winston,
Chair of the Labor
Council of LIHLA

Emily J. Closs

Kathleen Quickly

Margaret Stewart

Benjamin Nichols

Shirley Johnson

Nancy Melillo

Wilfrid Jean

Susan Melini

Steff Croft

Ureidy Adorno

Sharon Bland

Barbara Cossey

Judy Sadek

Yvonne Forrester

Marguerite Grasse

Valerie Wilkinson

Jessie Carrasco

Ruth L. Spencer-Avent

Jennie Ling Lee

Shelton Bullock

Myrtle Brown

Dorothy White

Anna Bean

Carroll Simmons

Renee Bodley

William Patters

Melwaud Campbell

Velma Breland

Enez Eli

Donna Nylen

Ethel McArthur

Violett DGil

Diane Goins

Ruth Mars

Erin R. Robinson

- 9 -

## SCHEDULE A

### Long Island Healthcare Labor Association

1.  Carillon Nursing Home

2.  Cedar Lodge

3.  Central Island

4.  Daleview Care Center

5.  Glen Garriff

6.  Ocean Promenade

7.  Parkview

8.  Port Jefferson

9.  Riverhead Nursing Home

10. Rockville Nursing Home

11. St. James Plaza

12. St. James Nursing Home

13. South Shore

14. Sun Harbor

June 9, 2004


Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036


Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period June 1, 2004-April 30, 2008, and has the same force and effect as if set forth therein.

With respect to the Reimbursement Clause (Article 38) of the CBAs, it is understood as follows:

1.    There shall be no Association-wide claim of inadequate reimbursement.

2.    Prior to any Employer exercising any rights it may have under Article 38 in the case of inadequate reimbursement, it must first submit its claim of inadequate reimbursement to the Labor Management Reimbursement Review Committee comprised of Union members Dennis Rivera, Jay Sackman, Dan Ratner, Irwin Bluestein, and Employers members John Chobor, Mark Sussman, Morris Tuchman, Eric Simon and Impartial Chairman Martin Scheinman. A quorum of two Union members and two Employer members of the Committee and the Impartial Chairman shall be required for the conduct of the Committee's business. No Employer may implement any lesser term or condition of employment, nor may any Employer's claim be submitted for adjudication by the Impartial Chairman, without having first been submitted to the committee.

3.    The Committee shall have full access to cost reports, rate sheets, and other documents, books and records as it may require to evaluate the Employer's claim of inadequate reimbursement.

4.    The fourth Whereas provision in the CBAs is deleted as it is no longer relevant.

Very truly yours,

Long Island Healthcare Labor Association


By: _____
Kenneth Winston
Chair of the Labor Council of LIHLA


AGREED:



NEW YORK'S HEALTH & HUMAN
SERVICE UNION, 1199/SEIU,
AFL-CIO

By: _____
Pearl Granat
Vice President

June 9, 2004


Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036


Dear Ms. Granat:

     This letter is delivered simultaneously with the execution
of the MOA between the Association and the Union covering the
period June 1, 2004 through April 30, 2008, and has the same
force and effect as if set forth therein.

BF Cost Savings Initiatives

This sets forth a list of cost savings initiatives identified
during the course of negotiations that, if aggressively and
effectively implemented should achieve the cost savings
commitments in the MOA of $22 million over the life of the MOA
and an annual and recurring savings rate of at least $4.4
million by the end of the MOA.  Moreover, the Union and the
Association have agreed that the Trustees and the Executive
Director of the BF shall aggressively seek additional ways to
reduce the cost of providing benefits while maintaining the
integrity of the benefits received by the Union Members.

As it is the intention of the parties to maintain and improve
the BF's programs, these and other adjustments are needed to
preserve the resources of the BF to provide its comprehensive
health coverage in the face of rising health care costs.  Thus,
without limiting the potential cost savings approaches the
Trustees and Executive Director of the BF should pursue, they
are directed to implement the following programs, policies and
plan changes.

A Cost Savings Committee ("Committee") consisting of Dennis
Rivera and Mark Sussman, or their designees, shall be
established.  The functions of the Committee include
establishing a base line for measurement, setting benchmarks and
milestones, measuring the results of and monitoring the effect
of the savings program referred to above. The Committee shall
also seek additional ways to improve the cost efficiency of the
Benefit Fund.

1.    Mandatory Mail Order for Maintenance Prescription Drugs

This Program requires active and retired members who use
certain prescription drugs on a regular and long term basis
to have those prescriptions filled, by mail, through the BF
pharmacy benefit manager.  This program will relieve some
members of the need to constantly reorder the drug and to
travel unnecessarily.  It will help the BF save resources
by purchasing in bulk.

2.    Mandatory Medicare risk HMO

A mandatory Medicare risk HMO for those in the greater New
York coverage area.  The program will provide full
hospital, medical, drug, eyeglasses and a limited dental
benefit.  The BF shall implement the program as soon as
practicable and shall enroll members as soon as the new HMO
benefit provider is available. All eligible retirees shall
enroll no later than January 1, 2005, except for hardship
exemptions.

The BF shall immediately investigate the availability of a
similar program for retirees living in Florida.

3.    Medical Management of Patient Care Services

As recommended by the actuarial consultants to the BF, in order
to  improve  the  quality  and  efficiency  of  the  radiology,
laboratory, and medical management of patient care services, the
BF Trustees shall (a) promptly contract with a vendor network as
the  sole  provider  to  BF  participants  and  beneficiaries  of
radiology  services  and  a  similar  provider  for  laboratory
services and  (b)  implement  a  program  of  improved  medical
management  of  patient  care  services.    The  radiology  and
laboratory vendor network provider agreements shall be effective
no  later  than  October  1,  2004  and  the  improved  medical
management program shall be implemented as soon as practicable.

4.    Pharmacy Benefits Manager

The BF shall rebid the contract for a pharmacy benefits manager
in order to achieve the most favorable terms available in the
marketplace.

5.    Coordination of Benefits

- 2 -

The BF shall redouble its efforts to strongly and vigorously enforce its coordination of benefits policy to ensure that all alternative sources of coverage are applied to offset and reduce the cost of providing benefits.

6.  Full Formulary program

The mandatory full formulary program, which is administered through the BF, by its pharmacy benefit manager shall, effective January 1, 2005, not cover proton pump inhibitors (e.g., Nexium), except where there is a diagnosis of disease that requires such prescription drugs for effective treatment. For other conditions, members have available effective over the counter medications (e.g., Prilosec OTC).

Medical Reimbursement Schedule

At the request of the Executive Director of the BF, Dennis Rivera and Mark Sussman, or their designees, shall meet to consider the necessity and viability of improving the medical reimbursement schedule. The factors that they shall consider may include, but are not limited to, the need for such increases, the excess of projected savings over the target set forth at Paragraph 4 of the MOA (if any), and the availability of Pension Fund diversion dollars. If they do not reach agreement, the matter shall not be arbitrable, however, the medical reimbursement schedule shall be increased by the value of projected savings in excess of the target set forth at Paragraph 4 of the MOA, if any.

Very truly yours,

Kenneth Winston
Chair of the Labor Council of LIHLA

AGREED:

1199/SEIU, New York's Health
& Human Service Union

Pearl Granat
Vice President

- 3 -

June 9, 2004


Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036


Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period June 1, 2004 through April 30, 2008, and has the same force and effect as if set forth therein

The 9.65% employment credit applicable to the BF, JSF, WPF, Education Fund, and Childcare Fund, as determined by the Impartial Chairman, shall continue through the term of this agreement, except that for the period June 1, 2004 through May 31, 2005 the employment credit shall be fixed at 10.65%.

Very truly yours,

Long Island Healthcare Labor Association


By: _Kenneth Winston_
Kenneth Winston
Chair of the Labor Council of LIHLA

AGREED:



NEW YORK'S HEALTH & HUMAN
SERVICE UNION, 1199/SEIU,
AFL-CIO

By: _Pearl Granat_
Pearl Granat
Vice President

```
AWARD OF THE IMPARTIAL CHAIRMAN
-----------------------------------X
In the Matter of the Arbitration
                                    X   Re: Delinquencies
          between                           June 22, 2007 -
                                    X       November 30, 2007
PORT JEFFERSON HEALTH CARE CENTER
A/K/A GLENHAVEN                     X

                    "Home"          X

          -and-                     X

1199SEIU                            X
UNITED HEALTHCARE WORKERS EAST
                                    X
                    "Union"
                                    X

-----------------------------------X
```

**APPEARANCES**

> **For the Home**
> JACKSON LEWIS, L.L.P.
>   Christopher M. Valentino, Esq.

> **For the Union**
> MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
>   Linda E. Rodd, Esq., of Counsel

**BEFORE:**   Martin F. Scheinman, Esq., Impartial Chairman

## OPINION

The undersigned is designated as Impartial Chairman in a Collective Bargaining Agreement between Port Jefferson Health Care Center a/k/a Glenhaven ("Home") and 1199SEIU United Healthcare Workers East.

The Union filed a Demand for Arbitration on behalf of the 1199/SEIU Greater New York Benefit Fund, the 1199/SEIU Greater New York Pension Fund, the 1199/SEIU Greater New York Education Fund, the 1199/SEIU Greater New York Child Care Fund, the 1199/SEIU Greater New York Job Security Fund and the 1199/SEIU Greater New York Worker Participation Fund ("Funds") seeking contributions for the Home's alleged delinquencies in contributions for the period June 22, 2007 through November 30, 2007.

A hearing was held on December 12, 2007. At that time, both parties were afforded full opportunity to introduce evidence and argument in support of their respective positions. They did so. The hearing and record were declared closed on December 12, 2007.

I am mindful of the Home's claim regarding the circumstances it faces because of certain financial difficulty. However, while I am mindful of these concerns, they cannot excuse the obligation of the Home to pay the amounts due. I find the Funds have established the amounts claimed as due and owing.

2

Subject to any payments made, the amounts due to the Funds through November 30, 2007, are as follows:

| | |
|---|---|
| 1199/SEIU Greater New York<br>Benefit Fund | $   193,352.49 |
| 1199/SEIU Greater New York<br>Pension Fund | $    54,218.89 |
| 1199/SEIU Greater New York<br>Education Fund | $     4,539.12 |
| 1199/SEIU Greater New York<br>Child Care Fund | $     4,539.12 |
| 1199/SEIU Greater New York<br>Job Security Fund | $     2,269.56 |
| 1199/SEIU Greater New York<br>Worker Participation Fund | $     2,269.56 |

These amounts must be paid within thirty (30) calendar days. Failure to pay in a timely fashion shall result in interest accruing at the rate of twelve percent (12%), per annum. Whether payment is made in a timely fashion is determined by the date the Funds' Office receives actual payment.

**AWARD**

1.  Subject to audit, the Home owes the various Greater New York Funds the amounts listed below as a result of delinquencies through November 30, 2007:

| | |
|---|---|
| 1199/SEIU Greater New York Benefit Fund | $ 193,352.49 |
| 1199/SEIU Greater New York Pension Fund | $ 54,218.89 |
| 1199/SEIU Greater New York Education Fund | $ 4,539.12 |
| 1199/SEIU Greater New York Child Care Fund | $ 4,539.12 |
| 1199/SEIU Greater New York Job Security Fund | $ 2,269.56 |
| 1199/SEIU Greater New York Worker Participation Fund | $ 2,269.56 |

2.  These amounts must be paid within thirty (30) calendar days of this Opinion and Award.

3.  Failure to pay in a timely fashion shall result in interest accruing at the rate of twelve percent (12%), per annum. Whether payment is made in a timely fashion is determined by the date the Funds' Office <u>receives</u> actual payment.

December 14, 2007.

_____
Martin F. Scheinman, Esq.,
Impartial Chairman

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF NASSAU           )

4

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

December 14, 2007.

_____
Martin F. Scheinman, Esq.,
Impartial Chairman

PORTJEFFERSON.FUNDS

5